UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VINCE E. WARDLOW,

      Petitioner,

v.                         Case No: 2:12-cv-185-FtM-29DNF

SECRETARY, DOC,

      Respondent.

---

## OPINION AND ORDER

Vince E. Wardlow ("Petitioner"), a prisoner currently incarcerated at the South Bay Correctional Facility in South Bay, Florida, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Petitioner attacks the lawfulness of his conviction and sentence for second degree murder entered in case number 06-CF-20099 in the Circuit Court of the Twentieth Judicial Circuit at Lee County, Florida. Id. Petitioner's amended petition is now before the Court (Doc. 19).

As his sole claim, Petitioner asserts that his appellate counsel provided ineffective assistance of counsel by failing to assert on direct appeal that the trial court erred by giving a fundamentally erroneous jury instruction on manslaughter by act (Doc. 23 at 7). Petitioner maintains that counsel was required to present this argument in a supplemental brief in light of the intervening decision in Montgomery v. State, 70 So. 3d 603 (Fla. 1st DCA 2009) (holding that the then-standard 2006 version of

manslaughter by act jury instruction was fundamentally erroneous because it imposed an additional element of intent to kill), approved by State v. Montgomery, 39 So. 3d 252 (Fla. 2010).

Upon due consideration of the pleadings and the state court record, the Court concludes that the petition must be denied. Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   **Background and Procedural History**[1]

On October 22, 2006, Jermaine Thompson was shot five times outside of his home in Fort Myers, Florida (T. at 268).[2]  As he lay dying, Thompson identified the shooter as "Vince Wardlow." Id. On November 22, 2006, Petitioner was charged by information with second degree murder with a firearm (Ex. 1).  At trial, Petitioner claimed that he was not the shooter and presented evidence of an alibi for the time of the shooting (T. at 276, 775-82).

---

[1] Only the facts and procedural history pertinent to the sole claim in this petition are set forth in this Order.

[2] Unless otherwise noted, citations to exhibits are to those filed by Respondent on February 15, 2013 (Doc. 29). Citations to the trial transcript, located in Exhibit Four, will be cited as (T. at ___).

At the close of trial, the trial court instructed the jury on the offense charged, second degree murder (T. at 1055-58). The jury was also give the Florida standard jury instruction for manslaughter by act and for manslaughter by culpable negligence pursuant to the 2006 version of the Florida standard jury instructions. In relevant part, the trial court instructed:

> The lesser crime indicated in the definition of second degree murder while possessing and discharging a firearm and causing death is manslaughter.
>
> To prove the crime of manslaughter, the State must prove the following two elements beyond a reasonable doubt:
>
> One, Jermaine Thompson is dead; and 2, (A) Vince E. Wardlow intentionally caused the death of Jermaine Thompson, or (B) the death of Jermaine Thompson was caused by the culpable negligence of Vince E. Wardlow.
>
> However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide, as I've previously explained those terms.
>
> I will now define "culpable negligence" for you. Each of you has a duty to act reasonably toward others. If there is a violation of that duty without any conscious intention to harm, that violation is negligence. But culpable negligence is more than a failure to use ordinary care towards others.
>
> In order for negligence to be culpable, it must be gross and flagrant.
>
> Culpable negligence is a course of conduct showing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of conscious

> indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard for the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.
>
> The negligent act or omission must have been committed with an utter disregard for the safety of others. Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known or reasonably should have known was likely to cause death or great bodily injury.
>
> In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.

(T. at 1059-60).

The jury found Petitioner guilty of second degree murder. He was adjudicated guilty and sentenced to life in prison (Ex. 5). On direct appeal, Petitioner raised twelve claims unrelated to the subject jury instruction claim (Ex. 8). On May 6, 2009, Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 11).

On July 20, 2009, Petitioner filed a *pro se* petition for a belated appeal which raised two claims of ineffective assistance of appellate counsel, one being the same claim raised in the instant petition (Ex. 13). Petitioner asserted that appellate counsel was ineffective for failing to file supplemental briefing based upon Montgomery v. State, a case decided by Florida's First District Court of Appeal after Petitioner filed his brief on appeal, but before the Second District Court of Appeal ruled on

the merits of Petitioner's claims. Id.  The appellate court construed the petition as alleging ineffective assistance of appellate counsel and ordered a response from the State (Ex. 14). The State responded that the issues had not been preserved for appellate review (Ex. 15).  The State also argued that appellate counsel could not be ineffective for failing to assert a theory that was not law at the time of appeal. Id.  The petition was denied by Florida's Second District Court of Appeal without a written opinion (Ex. 17).

On April 26, 2010, Petitioner filed a state petition for writ of habeas corpus in which he again argued that his appellate counsel was ineffective (Ex. 22).  Petitioner raised the same claim as he raised in his first ineffective assistance petition (and the same claim raised in the instant petition), but argued that it would be manifest injustice for the appellate court to deny his claim because new case law had been released by the Florida Supreme Court subsequent to his direct appeal. Id.  On July 20, 2010, Florida's Second District Court of Appeal denied the claim without a written opinion and without ordering briefing from the state (Ex. 23).

On April 20, 2010, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 24).  Petitioner raised four claims in the Rule 3.850 motion, including a claim

that trial counsel was ineffective for failing to object to the manslaughter by act jury instruction (Ex. 25).  In response, the state argued that the jury instruction was not fundamentally erroneous and that Petitioner could not be prejudiced since he also received a manslaughter by culpable negligence jury instruction (Ex. 26).  It does not appear that a written order was entered by the post-conviction court on the Rule 3.850 motion, but Florida's Second District Court of Appeal *per curiam* affirmed on February 8, 2012 (Ex. 32).

Petitioner filed the instant habeas petition in this Court on March 30, 2012 (Doc. 1).  An amended petition was filed on September 27, 2012 (Doc. 19).  The Court ordered Respondent to show cause why the relief sought in the amended petition should not be granted (Doc. 24).  Respondent filed a response to the amended petition (Doc. 27) which did not address the sole claim raised in the petition (Doc. 33).[3]  Thereafter, Respondent filed a supplemental response, and Petitioner filed a supplemental reply (Doc. 39; Doc. 43).

---

[3] The Court concluded that Respondent addressed a claim of ineffective assistance of trial counsel whereas Petitioner had raised a claim of ineffective assistance of appellate counsel (Doc. 33).

## II.  **Governing Legal Principles**

### A.  **Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")**

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

>     (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law;

or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155. Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum).  When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see, e.g., Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013); Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

**B.  Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.  This is a

"doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The same deficient performance and prejudice standards apply to appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Roe v. Flores-Ortega, 528 U.S. at 476-77.  If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal.  If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice.  Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997).  Non-meritorious claims which are not raised on direct appeal do not constitute ineffective assistance of counsel.  Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1144-45 (11th Cir. 2005).

## III. **Discussion**

Petitioner alleges that appellate counsel rendered ineffective assistance by failing to file supplemental briefing on direct appeal based on the First District Court of Appeal's decision in Montgomery v. State, 70 So. 3d at 603 ("Montgomery I").  Specifically, Petitioner maintains that Montgomery I invalidated the same manslaughter jury instruction used at Petitioner's trial because the 2006 standard manslaughter

instruction improperly imposed an additional element of intent to kill (Doc. 23 at 7).

Respondent argues that Petitioner is not entitled to habeas relief on this claim because, during the pendency of Petitioner's direct appeal (from October 16, 2008 until June 29, 2009), the decisional law in the Second District held that there was no fundamental error in the manslaughter by act jury instruction where, as in Petitioner's case, the jury also received an instruction on manslaughter by culpable negligence (Doc. 39 at 18, 20).

A brief discussion of the Florida courts' treatment of the 2006 pattern manslaughter jury instruction is important to understand Petitioner's claim.

### A.   Overview of Applicable Florida Law

At the time of Petitioner's trial in June of 2007, the 2006 version of the manslaughter by intentional act jury instruction, Florida Standard Jury Instruction (Criminal) 7.7, provided that a defendant was guilty of manslaughter by act if he intentionally caused the death of the victim.[4] The 2006 version also included the following language: "In order to convict of manslaughter by

---

[4] In 2008, the jury instruction was modified to provide, "In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death, only an intent to commit an act which caused death." In re Standard Jury Instructions in Criminal Cases, 997 So. 2d 403, 403 (Fla. 2008).

intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death." <u>See Montgomery v. State</u>, 39 So. 3d 252, 256 (Fla. 2010).

On March 14, 2007, in <u>Hall v. State</u>, 951 So. 2d 91 (Fla. 2d DCA 2007), Florida's Second District Court of Appeal concluded that this pattern instruction was not erroneous because it did not require an intent to kill – rather it required "an intentional act that cause[d] the death of the victim[.]" <u>Id.</u> at 96; <u>see also Zeigler v. State</u>, 18 So. 3d 1239, 1244 (Fla. 2d DCA Oct. 9, 2009)("[W]e believe that the <u>Hall</u> court was correct when it stated that the previous manslaughter by act instruction was not an erroneous statement of the law.").

On February 12, 2009, Florida's First District Court of Appeal disagreed with the Second District's <u>Hall</u> opinion and held that the standard manslaughter by act jury instruction improperly imposed the element of intent to kill that was not required under Florida law for the offense of manslaughter by act and was therefore fundamentally erroneous. <u>Montgomery I</u>, 70 So. 3d at 604-08. The <u>Montgomery I</u> court went on to hold that the instruction read to the jury in that case improperly imposed the intent element when it tracked the language of the standard jury instruction for manslaughter by act, providing that the state had to prove that Montgomery "intentionally cause [the victim's] death" in order to establish that he committed manslaughter. <u>Id.</u>   Finding that

Montgomery's conviction for second-degree murder was only one step removed from the lesser included offense of manslaughter, the court held that giving the erroneous instruction was fundamental error and reversible *per se*. Id. at 607-08.  The court remanded the case to the trial court for a new trial and certified to the Florida Supreme Court the question:

> IS THE STATE REQUIRED TO PROVE THAT THE DEFENDANT INTENDED TO KILL THE VICTIM IN ORDER TO ESTABLISH THE CRIME OF MANSLAUGHTER BY ACT?

Id. at 608.

On May 7, 2009, the Florida Supreme Court accepted jurisdiction to consider the issue. State v. Montgomery, 11 So. 3d 943 (Fla. 2009).  On April 8, 2010, the Florida Supreme Court approved the decision of the First District Court of Appeal. State v. Montgomery, 39 So. 3d 252, 259-60 (Fla. 2010)("Montgomery II"). The court answered the certified question in the negative, and held that the intent which the state must prove for the purpose of manslaughter by act is the intent to commit an act that was not justified or excusable, causing the death of the victim. Id.

In reaching its decision in Montgomery II, the Florida Supreme Court focused on whether the erroneous instruction pertained to a crime that was one step removed from the crime for which the defendant was convicted, not the crime charged. Montgomery II, 39

So. 3d at 259.[5]   In Florida, the necessarily lesser included offense of manslaughter is just one step removed from second-degree murder. Id.   Since Montgomery's conviction for second-degree murder was only one step removed from the necessarily lesser included offense of manslaughter, the court held that fundamental error occurred in his case because the manslaughter instruction erroneously imposed upon the jury a requirement to find that Montgomery intended to kill the victim. Id. (citing Pena v. State, 901 So. 2d 781, 787 (Fla. 2005) ("If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense.")).

Following the Florida Supreme Court's decision in Montgomery II, Florida's Second District Court of Appeal distinguished Montgomery II in a line of cases where the jury was instructed on both manslaughter by intentional act and manslaughter by culpable negligence, finding that in those cases, there was no fundamental error requiring reversal of a defendant's conviction for second degree murder. Barros-Dias v. State, 41 So. 3d 370 (Fla. 2d DCA 2010); Nieves v. State, 22 So. 3d 691 (Fla. 2d DCA 2009); see also

---

[5] Montgomery was charged with first degree murder, but convicted of second degree murder. Montgomery II, 39 So. 3d at 259.

Singh v. State, 36 So. 3d 848, 851 (Fla. 4th DCA 2010); Salanko v. State, 42 So. 3d 801, 802 (Fla. 1st DCA 2010).

On February 4, 2011, Florida's Second District Court of Appeal in Haygood v. State, 54 So. 3d 1035 (Fla. 2d DCA 2011), recognized and adhered to the decisional law of the Second District and affirmed on direct appeal a second degree murder conviction where both standard jury instructions on manslaughter were given. However, the appellate court certified the question to the Florida Supreme Court as one of great public importance:

> IF A JURY RETURNS A VERDICT FINDING A DEFENDANT GUILTY OF SECOND-DEGREE MURDER IN A CASE WHERE THE EVIDENCE DOES NOT SUPPORT A THEORY OF CULPABLE NEGLIGENCE, DOES A TRIAL COURT COMMIT FUNDAMENTAL ERROR BY GIVING A FLAWED MANSLAUGHTER BY ACT INSTRUCTION WHEN IT ALSO GIVES AN INSTRUCTION ON MANSLAUGHTER BY CULPABLE NEGLIGENCE?

Haygood, 54 So. 3d at 1038.  On February 14, 2013, the Florida Supreme Court answered the certified question in the affirmative, holding that the above-cited intermediate courts were wrong and that structural error persists even when the manslaughter by culpable negligence instruction was given along with the incorrect pattern manslaughter by act instruction. Haygood v. State, 109 So. 3d 735 (Fla. 2013).

### B.  **Analysis**

When Petitioner raised this claim in both his first and second state habeas petitions, Florida's Second District Court of Appeal denied the claims without a written opinion (Ex. 17; Ex. 23).

Accordingly, this Court does not know on which prong(s) of the Strickland test the state court based its denial. In Harrington v. Richter, the United States Supreme Court elaborated on the "double deference" owed by a habeas court to a state court decision regarding an ineffective assistance of counsel claim.  The Supreme Court explained:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, [as with summary decisions], could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.

131 S. Ct. at 786.  And when the claim under review alleges ineffective assistance of counsel:

> The federal court must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. at 788.  As emphasized in Richter, the general nature of the Strickland standard provides state courts with substantial leeway in applying Strickland to individual cases, thereby resulting in a substantial range of reasonable applications under Strickland's "doubly deferential" standard and § 2254(d). Id. at 786, 788.

With the relevant case law and chronology[6] of this case in mind, the Court concludes that the state post-conviction court properly rejected Petitioner's claim of ineffective assistance of appellate counsel.  While there is support for a conclusion that appellate counsel's performance was deficient for failing to file supplemental briefing on Montgomery I during the pendency of Petitioner's direct appeal, Petitioner has not demonstrated that he suffered resulting prejudice from counsel's performance.

### 1. Deficient Performance

Under Strickland, counsel's performance is measured for "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688.  Petitioner contends that appellate counsel should have filed supplemental briefing based upon the First District's decision in Montgomery I, because Montgomery I was decided after his appellate brief had been filed, but before the decision was issued in his direct appeal (Doc. 23 at 13).

---

[6] A brief reminder of the chronology of this case is appropriate.  Petitioner was charged with second degree murder on November 22, 2006.  Petitioner's trial took place in June of 2007, and he was found guilty as charged.  Petitioner filed an appeal brief on October 16, 2008.  The state filed an answer brief on January 12, 2009, and Petitioner replied on January 22, 2009. The First District Court of Appeal issued its decision in Montgomery I on February 12, 2009. The Second District Court of Appeal affirmed Petitioner's conviction and sentence on May 6, 2009 and mandate issued on June 29, 2009.  The decision in Montgomery II was issued on April 8, 2010 and the Florida Supreme Court's decision in Haygood was issued on February 14, 2013.

It is certainly true that appellate counsel did not provide deficient performance by failing to raise the manslaughter instruction claim in the initial appeal brief.   The Eleventh Circuit has consistently held that reasonably effective representation cannot include a requirement that counsel make arguments based upon predictions of how the law may develop.   See Pimental v. Florida Dep't of Corr., 560 F. App'x 942 (11th Cir. 2014)(no ineffective assistance for failure to predict that use of 2008 Florida manslaughter instruction was fundamental error); Black v. United States, 373 F.3d 1140, 1146 (11th Cir. 2004)("[A]ppellate counsel's performance was not deficient for failing to predict what was not yet a certain holding" and where, at the relevant time, "the legal principle at issue [was] unsettled"); United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) ("[W]e have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel," and that precedent applies even when the "issue was, in hindsight, a sure fire winner[.]"); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by Strickland, an attorney need not anticipate changes in the law.").

The instant issue, however, is whether appellate counsel provided deficient performance when he failed to supplement the initial brief on direct appeal.   Appellate counsel had almost

three months after Montgomery I to supplement his initial brief before the Second District Court of Appeals issued its decision in Petitioner's case.  A number of recent Florida appellate decisions have found a failure to request supplemental briefing in this and similar contexts to be deficient performance by appellate counsel. Coleman v. State, 128 So. 3d 193 (Fla. 5th DCA 2013); Horne v. State, 128 So. 3d 953 (Fla. 2d DCA 2013); Henry v. State, 98 So. 3d 1193 (Fla. 2d DCA 2012); Banek v. State, 75 So. 3d 762 (Fla. 2d DCA 2011).  Under these cases, the Court will assume, without deciding, that counsel's performance was deficient for failing to file supplemental briefing and will proceed directly to the prejudice prong of the Strickland analysis. See Wong v. Belmontes, 558 U.S. 15, 19 (2009) (assuming, for purposes of analysis, that counsel's performance was deficient because prejudice inquiry was dispositive to the claim); Frazier v. Bouchard, 661 F.3d 519, 530 (11th Cir. 2011) (finding that there was support for Bouchard's argument that his attorneys failed to satisfy Strickland's performance prong, but noting that the court "need not reach an ultimate conclusion on the matter, for we may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied.")(internal citations omitted); Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an

insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

### 2. *Prejudice*

Even if appellate counsel's performance was deficient for failing to seek supplemental briefing on direct appeal, Petitioner cannot demonstrate that he suffered prejudice resulting from this failure.  In <u>Griffin v. State</u>, 128 So. 3d 88 (Fla. 2d DCA 2013), <u>review granted</u>, 143 So. 3d 918 (Fla. Apr. 21, 2014), the Second District concluded, on facts similar to those at issue, that the same erroneous manslaughter jury instruction at issue in this case does not constitute fundamental error when the intent element is not disputed at trial. <u>Id.</u> at 90.[7]  The <u>Griffin</u> court recognized that the Florida Supreme Court has "long held that fundamental error occurs in a jury instruction where the instruction pertains to a disputed element of the offense and the error is pertinent or material to what the jury must consider to convict." <u>Id.</u> (citing

---

[7] In <u>Griffin</u>, the state presented eyewitness testimony that Griffin pulled up next to the victim's vehicle and "had words" with him through the windows of their vehicles. <u>Id.</u>  Griffin then took out a gun and shot the victim. <u>Id.</u>  Griffin's sole defense was mistaken identity in that he claimed that "an unknown individual walked between the vehicles to the victim's window and shot him. <u>Id.</u>  On direct appeal, Griffin argued that the trial court committed fundamental error by giving the erroneous 2006 standard jury instruction on the lesser included offense of manslaughter by act.

Haygood v. State, 109 So. 3d 735 (Fla. 2013)).  The Griffin court
further recognized that "[t]here is no dispute regarding the
elements of an offense when the manner of the crime is conceded
and the sole defense is mistaken identity." Id. at 90 (citing
Battle v. State, 911 So. 2d 85, 89 (Fla. 2005)).

The Second District Court of Appeal recently applied the
reasoning in Griffin to another similar case in which the defendant
urged that the erroneous manslaughter jury instruction resulted in
fundamental error. Nieves v. State, 144 So. 3d 649 (Fla. 2d DCA
2014).  Defendant Neives, like Petitioner, conceded at trial that
the victim was murdered, but claimed that somebody else did it.
Neives raised a Montgomery claim on direct appeal, and the Nieves
court concluded that "because the element of intent was not in
dispute at trial, the erroneous manslaughter instruction did not
constitute fundamental error[.]" Id. at 651; see also Berube v.
State, Case No. 2D09-4385, 2014 WL 5394501, at *9 (Fla. 2d DCA
Oct. 24, 2014) (finding that remanding for third trial would not
change the outcome because error from erroneous manslaughter jury
instruction was harmless when only dispute at trial was identity
of killer); Ebron v. State, 134 So. 3d 481 (Fla. 1st DCA 2013)
(holding that Montgomery error was not fundamental because intent
was not disputed by either the State or the defense).

At trial, Petitioner's sole theory of defense was that he did
not shoot the victim. This theory was set forth during defense

counsel's opening statement in which counsel conceded that the facts as set forth by the state "are probably 100 percent accurate, up to one very important point, which is essentially who did the shooting." (T. at 276).   Petitioner presented alibi witnesses at trial.   Witness Patrick Boston testified that Petitioner was attending his (Boston's) weekend-long birthday party at the time of the shooting and that he did not notice him leave the party at any time (T. at 775-82).   Two additional witnesses testified that Petitioner attended Boston's party and stayed all weekend at the hotel where the party was held (T. at 826-68).   During closing, defense counsel argued that the victim's dying declarations identifying Petitioner as the triggerman were either mistaken, misheard, or misinterpreted by the witnesses who testified. Counsel urged that Petitioner's alibi witnesses were to be believed instead (T. 970-92).   Whether Petitioner *intended* to kill the victim was not in dispute at trial and was not pertinent or material to what the jury needed to convict Petitioner of either second degree murder or manslaughter by act.

Based on the above, the Court concludes that Petitioner is not entitled to relief because the element of intent was never in dispute at Petitioner's trial. As a result, Petitioner cannot demonstrate fundamental error from the erroneous manslaughter jury instruction given in this case, and even had appellate counsel raised the issue, there is no likelihood that he would have

prevailed on direct appeal. See Smith v. Robbins, 528 U.S. 259, 285 (2000) (recognizing that to demonstrate prejudice, a habeas petitioner must show "a reasonable probability that, but for his counsel's unreasonable failure . . . he would have prevailed on his appeal."). Petitioner's claim fails to satisfy the prejudice prong of the Strickland analysis and is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  Certificate of Appealability[8]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional

---

[8] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El</u>, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The amended 28 U.S.C. § 2254 petition for habeas corpus relief filed by Vince Wardlow (Doc. 19) is **DENIED** and this case is **DISMISSED** with prejudice.

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___18th___ day of November, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE


SA: OrlP-4
Copies: All Parties of Record

- 25 -